UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BEACHCORNER PROPERTIES, LLC | CIVIL ACTION |
| VERSUS | NO. 23-1287 |
| INDEPENDENT SPECIALTY INSURANCE COMPANY | SECTION M (2) |

### ORDER & REASONS

Before the Court is a motion of defendant Independent Specialty Insurance Company ("ISIC") to compel arbitration and stay proceedings.[1] Plaintiff Beachcorner Properties, LLC ("Beachcorner") responds in opposition,[2] and ISIC replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting ISIC's motion to compel arbitration.

**I.   BACKGROUND**

This case arises from an insurance coverage dispute following Hurricane Ida, which made landfall on August 29, 2021.[4] Beachcorner alleges coverage for property it owns under a surplus lines insurance policy issued by ISIC.[5] On February 16, 2023, Beachcorner filed this suit against ISIC in state court seeking insurance proceeds and asserting claims for breach of contract and bad faith in handling Beachcorner's insurance claims.[6] ISIC removed the suit on grounds of diversity subject-matter jurisdiction under 28 U.S.C. § 1332.

The policy includes the following arbitration clause:

---

[1] R. Doc. 15.
[2] R. Doc. 23.
[3] R. Doc. 26.
[4] R. Doc. 1-1 at 7 (¶ 8).
[5] *See id.* (¶¶ 4-5); R. Doc. 6-3 at 2.
[6] R. Doc. 1-1 at 9-11.

> **4. Arbitration Clause**
>
> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this Insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.
>
> ….
>
> Any Arbitration hearing shall take place in Nashville, Tennessee, unless some other locale is agreed by the Arbitrator or Arbitration Tribunal.
>
> The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.[7]

On April 21, 2023, ISIC filed a motion to compel arbitration pursuant to this arbitration clause.[8] Subsequently, but before the Court ruled on the merits of the motion, the parties filed a joint motion to stay the case pending mediation, which the Court granted.[9] Accordingly, the motion to compel arbitration was denied as moot, without prejudice to its being refiled once the stay was lifted or expired.[10]

The stay expired on August 14, 2023, after mediation failed to resolve all claims, and on August 18, 2023, ISIC filed the instant renewed motion to compel arbitration.[11] During the stay, however, another section of this court certified a question to the Louisiana supreme court regarding the enforceability of the exact arbitration clause at issue here.[12] The certified question was "[w]hether La. R.S. 22:868 prohibits the enforcement of arbitration clauses in insurance contracts for surplus lines insurers."[13] Due to the certified question, on September 19, 2023, the Court held a status conference to discuss the instant motion to compel, during which the parties agreed that the matter should again be stayed pending either a decision by the Louisiana supreme court on the

---

[7] R. Doc 6-3 at 39-40.
[8] R. Doc. 6.
[9] R. Doc. 14.
[10] *Id.*
[11] R. Doc. 15.
[12] *Southland Circle, LLC v. Indep. Specialty Ins. Co.*, 2023 WL 6450425 (E.D. La. July 17, 2023).
[13] *Id.* at *2.

merits of the certified question, or a decision by the Louisiana supreme court to not accept the certified question.[14] The Louisiana supreme court ultimately denied certification,[15] so the Court lifted the stay to determine the merits of the instant motion to compel arbitration.[16]

## II.   PENDING MOTION

ISIC argues that the parties should be compelled to arbitrate the dispute because the arbitration clause is valid and enforceable under Louisiana law.[17] ISIC then argues that the policy's "broad delegation clause" requires that the arbitration panel, not this Court, decide whether the present dispute falls within the scope of the arbitration clause.[18] Regardless, says ISIC, Beachcorner's claims are arbitrable.[19] Next, ISIC contends that no statute or other law prevents enforcement of the arbitration clause.[20] In particular, ISIC argues that La. R.S. 22:868(A) does not prevent arbitration of this dispute because arbitration clauses in surplus lines policies are excepted under subsection (D) of the statute in that an arbitration clause is a type of forum-selection clause and does not oust a court of jurisdiction.[21]

In opposition, Beachcorner urges the Court to deny the motion to compel for three reasons: (1) La. R.S. 22:868 prohibits enforcement of the arbitration clause in this case;[22] (2) ISIC issued a subsequent service-of-suit endorsement to the policy that supplants the arbitration clause;[23] and (3) compelling a small, local business like Beachcorner to arbitrate in Tennessee renders the clause unconscionable.[24]

---

[14] R. Doc. 19.
[15] *Southland Circle, LLC v. Indep. Specialty Ins. Co.*, 2023 WL 642556 (La. Oct. 3, 2023).
[16] R. Doc. 22.
[17] R. Doc. 15-1 at 5.
[18] *Id.* at 6.
[19] *Id.* at 7.
[20] *Id.* at 7-8.
[21] *Id.* at 8-14.
[22] R. Doc. 23 at 4-9.
[23] *Id.* at 4, 9-12.
[24] *Id.* at 4, 12-14.

In reply, ISIC cites to additional recent cases holding that arbitration clauses in surplus lines polices are permitted under the exception in La. R.S. 22:868(D).[25] ISIC then contends that the service-of-suit endorsement does not supplant the arbitration clause but complements it,[26] and that plaintiff's legislative intent argument is a red herring.[27] Lastly, ISIC argues that the arbitration clause is not unconscionable since it is conspicuous and plaintiff fails to demonstrate inadequate bargaining strength or an incapacity to read and understand the policy.[28]

### III.  LAW & ANALYSIS

"[A] court must hold a party to its arbitration contract just as the court would to any other kind [of contract]." *Morgan v. Sundance*, 596 U.S. 411, 418 (2022). In doing so, courts perform a two-step analysis to determine whether parties should be compelled to arbitrate a dispute. They must determine: (1) "whether the party has agreed to arbitrate the dispute"; and (2) "whether 'any federal statute or policy renders the claims nonarbitrable.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 233-34 (5th Cir. 2009) (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). The first step is further divided into two additional questions, requiring a court to ask: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement"? *Id.* (quotation omitted). When there is a valid delegation clause, however, the first step of the analysis changes:

> [I]f the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step – an analysis of contract formation – as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause – that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

---

[25] R. Doc. 26 at 2-5.
[26] *Id.* at 5-7.
[27] *Id.* at 7-10.
[28] *Id.* at 10-13.

4

*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (internal citations and footnote omitted). In other words, a valid delegation clause may delegate the scope determination (arbitrability) to the arbitrator. If the arbitration agreement "clearly and unmistakably delegated arbitrability, [a court] 'must refer the claim to arbitration,'" but if not, it "'must perform the ordinary arbitrability analysis.'" *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714 (5th Cir. 2017) (quoting *Kubala*, 830 F.3d at 203).

### A. The Parties Agreed to Arbitrate the Dispute

#### 1. Validity of the arbitration agreement

The determination of whether the parties agreed to arbitrate the dispute "is generally made on the basis of 'ordinary state-law principles that govern the formation of contracts." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Louisiana law, a valid contract requires: (1) capacity to contract; (2) consent; (3) lawful cause; and (4) a valid object. La. Civ. Code arts. 1918, 1927, 1966, 1971. Here, Beachcorner does not argue that the arbitration clause is invalid under Louisiana contract law. Indeed, Beachcorner alleges that "at all times relative to [the] complaint," the policy was "in full force and effect."[29] Beachcorner nonetheless argues that compelling arbitration would be unconscionable due to the expense and inconvenience of arbitration in a distant state. To the extent this argument may be understood to raise the issue of invalidity, however obliquely, the Court will now address it out of an abundance of caution.

"Louisiana caselaw analyzing arbitration provision disputes demonstrates that 'invalidity' includes, yet is not limited to, contracts that contain provisions that are (1) unconscionable or (2) possess features of both adhesionary formation and unduly harsh substance." *Baudoin v. Mid-La.*

---

[29] R. Doc. 1-1 at 7 (¶ 6).

*Anesthesia Consultants, Inc.*, 306 F. App'x 188, 195 (5th Cir. 2009); *see also Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) ("'[G]enerally applicable contract defenses, such as fraud, duress, or *unconscionability*, may be applied to invalidate arbitration agreements ....'") (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)) (emphasis in original).  This is because, under Louisiana law, "an unconscionable contract or term can be thought of as lacking the free consent that the [Louisiana Civil] Code requires of all contracts." *Iberia Credit Bureau*, 379 F.3d at 167.  Therefore, the Court will determine whether the arbitration agreement is unconscionable.[30]

"In order to be invalidated, a provision must possess features of both adhesionary formation and unduly harsh substance." *Id.*  Louisiana courts consider four factors in making this determination: "(1) the physical characteristics of the clause, including font size; (2) the distinguishing features of the clause; (3) the mutuality of the clause, in terms of the relative burdens and advantages; and (4) the relative bargaining strength of the parties." *Bopp v. Indep. Specialty Ins. Co.*, 2023 WL 2185412, at *4 (E.D. La. Feb. 23, 2023) (citing *Aguillard v. Auction Mgmt. Corp.*, 908 So. 2d 1, 9 (La. 2005)); *see Turnipseed v. APMT, LLC*, 2018 WL 5977889, at *2 (E.D. La. Nov. 14, 2018).  This Court has previously analyzed these factors in relation to the same arbitration clause at issue in this case. *See Bopp*, 2023 WL 2185412, at *4.  Just as this Court held

---

[30] Here, as in *Iberia Credit Bureau*, "the parties on both sides of the case … have treated the question of the possible unconscionability of the arbitration clause as a matter to be decided by the court rather than by the arbitrator. We will therefore proceed on the same basis." 379 F.3d at 166 n.6 (internal citations omitted).  *But see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72-73 (2010) (holding that unless a party "challenged the delegation provision specifically," a court "must treat it as valid … and must enforce it … leaving any challenge to the validity of the Agreement as a whole [*i.e.*, the arbitration agreement] for the arbitrator"); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("[W]e first look to see if an agreement to arbitrate was formed, then determine if it contains a delegation clause.  If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration.  Challenges to the arbitration agreement as a whole are to be heard by the arbitrator.  Arguments that an agreement to arbitrate was never formed, though, are to be heard by the court even where a delegation clause exists."); *Van Buren v. Pro Se Plan., Inc.*, 2014 WL 6485653, at *4 (E.D. La. Nov. 18, 2014) (same).

6

in *Bopp*, the arbitration clause in Beachcorner's policy is not adhesionary under the *Aguillard* factors: The clause is conspicuous, appearing on page 27 of a 39-page "All Commercial Property Form" constituting a principal part of the policy. It is clearly labeled with the header "Arbitration Clause" in bold print, set off from text, and the body of the provision is in clear, legible font that is the same, standard size as the rest of the surrounding provisions. The arbitration clause is mutual, providing that "all matters in dispute" will be subject to arbitration and does not reserve to the insurer remedies that are unavailable to the insured. And, Beachcorner has not demonstrated that it did not have adequate bargaining strength or the capacity to read and understand the policy terms before agreeing to them. Beachcorner owns several properties and had a choice when procuring insurance. It could have walked away from a surplus lines policy containing an arbitration clause. "In Louisiana, 'a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him.'" *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, 2021 WL 359735, at *13 (M.D. La. Feb. 2, 2021) (quoting *Aguillard*, 908 So. 2d at 17).

Still, apart from the *Aguillard* factors, Beachcorner argues that enforcing the arbitration clause would be unconscionable because of the costs it would be forced to bear. The Supreme Court has explained that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). "This, in turn, has been interpreted to require the [p]laintiff to show that her particular circumstances would render her unable to afford any required fees of arbitration." *Van Buren*, 2014 WL 6485653, at *6. For example, in *Van Buren*, the court determined that while the plaintiff

7

had "provided some evidence of the fees that could be charged were the matter referred to AAA Arbitration, there [was] absolutely no showing of [the plaintiff's] particular means or ability to cover these fees (nevermind any showing as to the possibility of recovering fees or costs in the event of a favorable result in arbitration)." *Id*.; *see also Bell v. Koch Foods of Miss., LLC*, 358 F. App'x 498, 504 (5th Cir. 2009) (holding that the plaintiffs failed to prove unconscionability because, while the plaintiffs provided the estimated costs of arbitration and generally alleged that they would not be able to pay them, they did not provide "any individualized information about their ability to pay those costs"); *Costanza v. Allstate Ins. Co.*, 2002 WL 31528447, at *5 (E.D. La. Nov. 12, 2002) *(*"The mere fact that plaintiff faces the possibility of being charged arbitration fees, including sharing, does not render the clause unconscionable.").

Beachcorner argues that "bringing this claim under the American Arbitration Association would be a minimum AAA fee of $16,175.00 under the AAA standard fee schedule (or $18,550.00 under a fee schedule)," not including "the fees for the three arbitrators as required in the purported arbitration clause that will add tens of thousands of dollars, travel expenses for Beachcorner and its Louisiana counsel to and from Tennessee and room and board for the hearing, or the costs of the private hearing rooms that may be necessary."[31] But Beachcorner makes no showing of its particular means or ability to pay these fees, nor does Beachcorner make any showing as to the possibility of recovering these costs in the event of a favorable arbitration award – even though it acknowledges the possibility.

In sum, then, the arbitration clause is valid and not unconscionable.

---

[31] R. Doc. 23 at 13 (emphasis omitted).

### 2. Scope of the arbitration agreement

As previously noted, if there is a valid delegation clause, the Court does not address the "scope" determination. ISIC points to the following language in the arbitration agreement as the relevant delegation clause: "All matters in dispute between you and us … in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below."[32] Other courts addressing almost identical language have held it to constitute a valid delegation clause. *See, e.g.*, *Georgetown Home Owners Ass'n*, 2021 WL 359735, at *15 (addressing an almost identical delegation clause and holding that the clause "clearly and unmistakably evidenced [the parties'] intent to arbitrate all their claims, disputes and other matters pertaining to the contractual agreement," including arbitrability and the plaintiff's bad-faith claims); *Figear, LLC v. Velocity Risk Underwriters Claims*, 2022 WL 2812980, at *2 (E.D. La. July 18, 2022) (same). Moreover, Beachcorner fails to rebut or even address the validity of the purported delegation clause. The Court thus finds that the clause delegates the issue of arbitrability to the arbitrator.

Because the arbitration clause is valid and contains a delegation clause, the parties meet the first prong of the analysis for compelling arbitration, and the Court must next determine whether any federal statute or policy renders the claims nonarbitrable.

### B. No Statute or Policy Renders Beachcorner's Claims Nonarbitrable

### 1. La. R.S. 22:868 does not prohibit enforcement of the arbitration clause

Federal policy favors treating and enforcing agreements to arbitrate just like any other contract. *Morgan*, 596 U.S. at 418. This federal policy is codified in the Federal Arbitration Act

---

[32] R. Doc. 6-3 at 39.

("FAA"), 9 U.S.C. §§ 1-16, which governs the enforceability and interpretation of arbitration agreements.  In particular, the FAA preempts any state rule that discriminates on its face against arbitration or that covertly accomplishes the same objective by disfavoring contracts that have the defining features of arbitration agreements.  *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017).

Meanwhile, the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, "provides that 'any state law enacted for the purpose of regulating insurance will trump, or reverse preempt, any contrary federal law that does not relate specifically to insurance,'" such as the FAA.  *Ramsey v. Indep. Specialty Ins. Co.*, 2023 WL 5034646, at *2 (E.D. La. Aug. 8, 2023) (quoting *Courville v. Allied Pros. Ins. Co.*, 174 So. 3d 659, 665 (La. App. 2015)), *appeal docketed*, No. 23-30742 (5th Cir. Oct. 20, 2023).  La. R.S. 22:868 is one such state law.  It prohibits insurance contracts "delivered or issued for delivery" in Louisiana and covering people or property located in Louisiana from depriving Louisiana courts of jurisdiction or venue over an action against an insurer.  La. R.S. 22:868(A)(2).  Simply put, when an insurance contract covers a Louisiana resident, subsection (A)(2) prohibits any provision in the policy that would prevent Louisiana courts from exercising jurisdiction over the matter.  Nonetheless, subsection (D) sets out an exception to this rule, which states that "[t]he provisions of Subsection A … shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance."  La. R.S. 22:868(D).

Surplus lines policies (like the one at issue in this case) are not subject to approval by the Department of Insurance.[33]  La. R.S. 22:446(a) ("The commissioner shall not require surplus lines

---

[33] Quoting from the Louisiana Insurance Department's surplus lines brochure, ISIC explains:

> Surplus lines carriers insure "unique, large or high risks.["]  To do so, they "have more freedom and flexibility for accepting risks and designing and pricing their policies."  In particular, they are excepted from the Department's "rate and policy review," which allows them the "flexibility needed

10

insurers to file or seek approval of their forms and rates for property and casualty insurance …."). Forum and venue selection clauses are therefore permitted in these policies. The issue, then, is whether arbitration clauses are permitted under La. R.S. 22:868(D) – that is, whether subsection (D)'s "forum or venue selection clause" exception encompasses arbitration clauses.

Federal district courts in Louisiana are split on this issue. At least three other sections of this court have held that arbitration clauses in surplus lines policies are enforceable pursuant to La. R.S. 22:868(D). *See, e.g.*, *Ramsey*, 2023 WL 5034646, at *3-5 (Lemelle, J.) ("As defendant ISIC is a surplus line insurer with policies not subject to approval by the Department of Insurance, La. Rev. Stat. § 22:868(D) permits forum and venue selection clauses as excepted from La. Rev. Stat. § 22:868(A). Therefore, the Court holds that the instant arbitration clause is not precluded by La. Rev. Stat. § 22:868, and is therefore enforceable against plaintiffs as a valid agreement to arbitrate between the parties."); *Bourgeois v. Indep. Specialty Ins. Co.*, 2023 WL 6644171, at *2-4 (E.D. La. Oct. 12, 2023) (Lemmon, J.) ("[A]s a surplus lines insurer, under 22:868(D) and 22:446(a), ISIC is exempt from the provision in 22:868(A) prohibiting arbitration clauses in insurance contracts, and as other courts in this district have concluded, the arbitration clause is valid and enforceable."); *Queens Beauty Supply, LLC v. Indep. Specialty Ins. Co.*, 2023 WL 7154117, at *2-3 (E.D. La. Oct. 31, 2023) (Guidry, J.) ("Although generally prohibited in Louisiana insurance contracts under LA R.S. 22:868(A), LA R.S. 22:868(D) allows surplus lines insurers to include forum and venue selection clauses in their policies. Louisiana courts explicitly recognize arbitration clauses as a type of forum selection clause. Surplus lines insurers are thus not prohibited from including arbitration clauses in their policies."). By contrast, another section of

---

to provide a market" for unique risks. This flexibility is especially important given the current insurance crisis in Louisiana.

R. Doc. 15-1 at 8-9 (internal citations omitted) (quoting R. Doc. 15-2).

this court and another district court in this circuit have held the opposite. *See, e.g.*, *Bufkin Enters. LLC v. Indian Harbor Ins. Co.*, 2023 WL 2393700, at *5-7 (W.D. La. Mar. 7, 2023) (Cain, J.) ("Based on the text of Section 22:868, the Court cannot … arrive at an interpretation that conflates arbitration clauses with forum and venue clauses; the former is jurisdictional whereas the latter are not. Thus, to read arbitration clauses into the text of Subsection D would be to confer a different meaning than intended by the legislators."), *appeal docketed*, No. 23-30171 (5th Cir. Mar. 27, 2023); *Next Level Hosp. LLC v. Indep. Specialty Ins. Co.*, 2023 WL 2771583, at *3-6 (W.D. La. Mar. 31, 2023) (Cain, J.) (same); *Fairway Vill. Condos. v. Indep. Specialty Ins. Co.*, 2023 WL 2866944, at *4-5 (E.D. La. Apr. 10, 2023) (Brown, J.) ("[T]he plain language of § 22:868(D) is limited to forum and venue selection clauses, and 'to read arbitration clauses into the text of Subsection D would be to confer a different meaning than intended by the legislators.'") (quoting *Bufkin*, 2023 WL 2393700, at *7), *appeal docketed*, No. 23-30274 (5th Cir. Apr. 27, 2023). The Court agrees with the holdings and reasoning of *Ramsey*, *Bourgeois*, and *Queens Beauty Supply*.

The United States Supreme Court has repeatedly held that "an arbitration agreement is 'a specialized kind of forum-selection clause.'" *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974), and citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630 (1985)); *see also Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (explaining that the plaintiffs' proposed distinction between arbitration and forum-selection clauses "contradicts both Supreme Court and Fifth Circuit precedent and consequently must be rejected" because arbitration clauses are but a subset of forum-selection clauses). Louisiana state courts have taken the same position. *See Stadtlander v. Ryan's Fam. Steakhouses, Inc.*, 794 So. 2d 881, 890 (La. App. 2001) ("An arbitration agreement is a 'kind of forum-selection clause,' and that by agreeing to arbitrate a

particular cause of action, parties do not forgo any substantive rights, but only agree to submit to the jurisdiction of an arbitral, rather than a judicial, forum.") (quoting *Scherk*, 417 U.S. at 519, and citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31-32 (1991), and *Mitsubishi Motors*, 473 U.S. at 628)). Indeed, the Louisiana supreme court has expressly stated that "[a]n arbitration clause has been characterized by this court as a type of venue selection clause." *Donelon v. Shilling*, 340 So. 3d 786, 790 n.6 (La. 2020). As explained by the Louisiana supreme court in *Hodges v. Reasonover*, "[a]n arbitration clause does not inherently limit or alter either party's substantive rights; it simply provides for an alternative venue for the resolution of disputes." 103 So. 3d 1069, 1076 (La. 2012).

This makes sense, for, contrary to Beachcorner's arguments, arbitration clauses do not divest a court of jurisdiction.[34] *Ruiz v. Donahoe*, 784 F.3d 247, 250 (5th Cir. 2015) ("[A]greements to arbitrate implicate forum selection and claims-processing rules not subject matter jurisdiction."); *Perrera v. KYMCO USA, Inc.*, 2018 WL 999911, at *3 (E.D. La. Feb. 21, 2018) ("'[A]n order compelling arbitration does not under the [FAA] divest the court, state or federal, of jurisdiction.'") (quoting *Cure v. Toyota Motor Corp.*, 248 F. Supp. 2d 594, 597 (S.D. Miss. 2003)).

---

[34] Beachcorner cites *Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.*, 282 So. 3d 1042 (La. 2019), in support of its argument that arbitration provisions "serve to deprive the courts of jurisdiction under the law." R. Doc. 23 at 7-8. But *Creekstone* is inapposite. First, while *Creekstone* did address La. R.S. 22:868, it was decided before the enactment of subsection (D). Second, the Louisiana supreme court's opinion addressed "[t]he narrow legal question" of "whether the forum selection clause in the XL Insurance policy, which requires that litigation be brought in New York state, violates La. R.S. 22:868 and Louisiana public policy." *Id.* at 1046. The court held that it did not, declining to extend the definition of "jurisdiction" to include "venue" or "forum." The opinion did *not* address whether La. R.S. 22:868 prohibits arbitration clauses; only Justice Weimer's concurrence did. *Id.* at 1053 (Weimer, J., concurring) ("I am convinced that La. R.S. 22:868(A)(2)'s prohibition is directed at agreements, like compulsory arbitration provisions, that would deprive Louisiana courts of the legal power and authority to hear a dispute."). Thus, as was well explained in *Bourgeois*:

> the argument urged by plaintiffs is premised on dicta contained in a concurrence, and is not binding precedent. … [W]hatever persuasive value it has, it is outweighed by the Supreme Court of Louisiana's acknowledgment that "an arbitration clause does not inherently limit or alter either party's substantive rights; it simply provides for an alternative venue for the resolution of disputes."

2023 WL 6644171, at *3 (quoting the Louisiana supreme court's post-*Creekstone* decision in *Donelon*, 340 So. 3d at 790 n.6, which also observed that an arbitration clause is merely a type of venue-selection clause).

Indeed, "when a district court with jurisdiction over a case refers the case to arbitration and orders it administratively closed, the court retains jurisdiction over the case." *Rodgers v. United Servs. Auto. Ass'n*, 2022 WL 2610234, at *2 (5th Cir. July 8, 2022), *cert. denied*, 143 S. Ct. 780 (2023). The district court retains jurisdiction in order to review the arbitration award and decide whether to confirm or vacate it. *See id.*

Consequently, for these reasons and those stated in *Ramsey*, *Bourgeois*, and *Queens Beauty Supply*, the Court finds that La. R.S. 22:868(D) permits the arbitration clause in the subject surplus lines policy.

### 2. The statute's legislative history does not support rejection of the arbitration clause

The legislative history of La. R.S. 22:868 does not support a finding that the statute prohibits the instant arbitration clause. The only support Beachcorner presents for this argument are the oral statements made by Senator Luneau and Senator Peacock during the reading and final passage of the amendment adding subsection (D) to the statute.[35] Beachcorner argues that, pursuant to these statements, subsection (D) applies only to surplus lines insurers with annual premiums of over $200,000. While it is true that the senators mentioned that subsection (D) applies to companies with policy premiums of over $200,000,[36] these remarks were not made with respect to surplus lines carriers. Policy forms issued by surplus lines carriers are just one of the several kinds of policy forms not subject to approval by the Department of Insurance.[37] The senators were

---

[35] R. Doc. 23 at 8 (citing *Prohibits insurance contracts from depriving courts of this state or venue of action against insurer: Hearing on S.B. 156 before the Senate Chamber*, 2020 Leg., Reg. Sess. at 1:15:24 to 1:17:30 (La. 2020) (hereinafter "Hearing on S.B. 156") (statements of Sen. Peacock and Luneau adopting La. R.S. 22:868(D)), https://senate.la.gov/s_video/videoarchive.asp?v=senate/2020/05/051920SCHAMB_0).

[36] Hearing on S.B. 156, *supra* note 35 (Senator Luneau: "So Mr. President, members on the … on the amendment, what we're doing is we're saying that in these large commercial-type insurance policies with over $200,000 premiums, if the parties do negotiate, they can choose to exclude the venue and have a different venue if they both agree to it.").

[37] *See, e.g.*, La. R.S. 22:446(a) (exempting surplus lines carriers); La. R.S. 22:861(F) (exempting special commercial insurance carriers).

14

apparently referring to the $200,000 premium requirement applicable to certain "special commercial entities," a different category of insurers whose policy forms are exempt from approval by the Department of Insurance.[38] La. R.S. 22:861(F).  Beachcorner's argument that subsection (D) "can *only* apply … to surplus insurance policies with an annual premium 'over $200,000'"[39] mistakenly conflates the two categories of policies exempt from the approval requirement.

Regardless, and more importantly, the $200,000 premium requirement appears nowhere in the text of subsection (D).  "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."  La. Civ. Code art. 9; *see also* La. R.S. 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.").  The statute is clear: it permits forum- or venue-selection clauses – including their subset of arbitration clauses – in policy forms not subject to approval by the Department of Insurance, without imposing any $200,0000 premium threshold for such policies.  La. R.S. 22:868(D).  Any other reading of the statute contradicts its plain language, as well as the line of cases consistently holding that subsection (D) applies to "surplus lines insurers" with no reference to a premium threshold.  *See Hotel Mgmt. of New Orleans, LLC v. Gen. Star Indem. Co.*, 603 F. Supp. 3d 356, 363 (E.D. La. 2022) ("Because, as even Plaintiff acknowledges, the policy at issue here is an instance of surplus lines insurance, which does not require approval by the Department of Insurance, § 22:868(D) applies."), *aff'd*, 2023 WL 3270904 (5th Cir. May 5, 2023); *Brooks & Brooks Invs. LLC v. Mt. Hawley Ins. Co.*, 2022 WL 17476969,

---

[38] La. R.S. 22:861(F) exempts "[i]nsurers negotiating with and insuring special commercial entities" from the Department of Insurance's approval requirements.  For a definition of "special commercial entities," *see* La. Admin. Code tit. 37, pt. XIII, § 9013.

[39] R. Doc. 23 at 8 (emphasis in original).

at *2 (E.D. La. Dec. 6, 2022) ("Subsection D of the statute expressly and unambiguously restricts the scope of Subsection A to policies that are subject to approval by the Department of Insurance. … Surplus lines insurers are exempted under the Insurance Code from filing or seeking approval of their forms pertaining to property insurance. … Thus, § 868(A) does not render the forum-selection clause in this case unenforceable."); *Burk Holding Co. v. Mt. Hawley Ins. Co.*, 2023 WL 183898, at *5 (E.D. La. Jan. 13, 2023) (same).

### 3. The service-of-suit clause does not supplant the arbitration clause

Beachcorner also argues that the service-of-suit clause conflicts with and thus supplants the arbitration clause because ISIC subsequently agreed to submit to the "full jurisdiction of 'any court' in the United States."[40] The Fifth Circuit rejected a similar argument in *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991), wherein the court held that a service-of-suit clause "could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award." *Id.* at 1205. Indeed, in *McDermott*, the Fifth Circuit expressed its doubt that an insurer "would secure an almost infinitely broad arbitration clause and also permit [the plaintiff] to attack it in the court of its choice." *Id.* As a result, "[s]ince *McDermott*, courts have consistently held that endorsements and service of suit clauses … do not nullify otherwise valid arbitration agreements." *Acad. of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 2023 WL 246832, at *2 (E.D. La. Jan. 18, 2023) (collecting cases). Rather, courts hold that "the service of suit clause complements the arbitration clause by establishing a forum where the parties may enforce an arbitration award." *AJ's Shoes Outlet, LLC v. Indep. Specialty Ins. Co.*, 2023 WL 358779, at *6 (E.D. La. Jan. 23, 2023); *see also 1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, 2020 WL

---

[40] R. Doc. 23 at 4 (citing R. Doc. 6-3 at 83).

7342752, at *10 (E.D. La. Dec. 14, 2020) ("[B]ased on other courts' application of *McDermott* to similar service of suit provisions, we find that the instant provision was not intended to override the valid arbitration agreement."). This Court agrees and finds that the arbitration clause establishes that all disputes arising from the policy are to be determined by arbitration and that the service-of-suit endorsement merely establishes a forum where the parties may enforce an arbitration award.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that ISIC's motion to compel arbitration (R. Doc. 15) is GRANTED.

IT IS FURTHER ORDERED that the captioned matter is REFERRED to arbitration for resolution and is STAYED pending the outcome of the arbitration.

New Orleans, Louisiana, this 3rd day of November, 2023.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE